UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PURDUE PHARMACEUTICAL PRODUCTS, L.P., *et al.*,<br><br>        Plaintiffs,<br><br>     v.<br><br>ACTAVIS ELIZABETH LLC, *et al.*,<br><br>        Defendants. | Civil Action No. 12-5311(JLL)<br><br>**CLERK'S OPINION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO TAX COSTS** |

      This matter has come before the Clerk on the motion [Dkt. Entry 429] of Defendants Actavis Elizabeth LLC ("Actavis"), Novel Laboratories, Inc. ("Novel"), Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. (together, "DRL") (collectively, "Defendants" hereinafter) to tax costs against Plaintiffs Purdue Pharmaceutical Products, L.P., Purdue Pharma L.P. and Transcept Pharmaceuticals, Inc. (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1.  Plaintiffs oppose this motion.

      This Hatch-Waxman litigation involved the alleged infringement of several of Plaintiffs' patents for their Intermezzo brand medication for the treatment of middle-of-the-night insomnia. Transcept Pharmaceuticals, Inc. ("Transcept," currently known as Paratek Pharmaceuticals, Inc.) is the owner of the patents at issue, which are licensed exclusively to Purdue Pharmaceutical Products L.P. and Purdue Pharma L.P.  This litigation was prompted by the filing by each of the Defendants of an Abbreviated New Drug Application ("ANDA") for approval by the Food and Drug Administration ("FDA") to market a generic version of Plaintiffs' sublingual tablets containing 1.75 mg and 3.5 mg of zolpidem tartrate.  Plaintiffs alleged that the filing of such

ANDAs with the FDA prior to the expiration of their patents constituted infringement of such patents.

Civil Action No. 12-5311, brought against Actavis on August 23, 2012 [Dkt. Entry 1], was the first of six filed in this district on the patents at issue. The five other cases were consolidated with Civ. No. 12-5311 for all purposes on January 14, 2013 [Dkt. Entry 17], May 1, 2013 [Dkt. Entry 70] and February 26, 2014 [Dkt. Entry 122].[1,2]

While the moving parties here, i.e., Actavis, Novel and DRL, proceeded to a bench trial, the three remaining defendants entered into stipulations with Plaintiffs along the way. By stipulation and order of September 25, 2013 [Dkt. Entry 98], suit against Par Formulations Private, Ltd. was dismissed without prejudice after it withdrew its ANDA and all parties agreed to bear their own costs of suit. By stipulations of November 25, 2014 [Dkt. Entry 323] and December 1, 2014 [Dkt. Entry 332] respectively, Par and TWi agreed with Plaintiffs to be bound by the final judgment without participating in the trial. All parties agreed that the cost judgment entered in this case would not apply to Par and TWi and waived any claims for costs against each other. [Dkt. Entry 323, ¶¶ 7, 8; Dkt. Entry 332, ¶¶ 7, 8].

---

[1]      Unless otherwise noted, references herein are to docket entries in Civ. No. 12-5311, wherein all filings in all of the cases were docketed subsequent to the consolidation orders.

[2]      The five other cases consolidated with Civ. No. 12-5311 are:
Civ. No. 12-5650 filed against Novel on September 10, 2012;
Civ. No. 12-6738 filed against Par Pharmaceutical, Inc. ("Par") on October 25, 2012;
Civ. No. 12-6741 filed against Par Formulations Private, Ltd. on October 25, 2012;
Civ. No. 13-2067 filed against DRL on April 2, 2013; and
Civ. No. 13-5003 filed against Twi Pharmaceuticals, Inc. ("TWi") on August 20, 2013.

Three patents were alleged by Plaintiffs to have been infringed:  U.S. Patent No. 7,682,628 (the "'628 patent"), U.S. Patent No. 8,242,131 (the "'131 patent"); and U.S. Patent No. 8,252,809 (the "'809 patent").  A fourth patent, U.S. Patent No. 7,658,945 (the "'945 patent"), was raised in the counterclaims of Actavis, Novel and TWi.  Simply stated, the defendants asserted invalidity of the patents and non-infringement thereof in their counterclaims. [Dkt. Entries 43, 44, 47, 73; Dkt. Entry 12 in Civ. No. 13-5003].

As in the normal course of patent infringement cases, a Markman hearing was held on May 8, 2014 [Dkt. Entry 173] and the Court issued its claim construction order and opinion on June 11, 2014 [Dkt. Entries 185, 186].  After the denial of the parties' summary judgment motions [Dkt. Entries 288, 289, 272, 273, 325, 326] and in limine motions [Dkt. Entry 331], a ten-day bench trial was held on December 1-5, 8-10, 12, 15, 2014 [Dkt. Entries 335-39, 341-45].  Plaintiffs' and Defendants' motions for judgment as a matter of law were denied on January 12, 2015 [Dkt. Entries 366, 367] and summations were given on February 13, 2015. [Dkt. Entry 388].

Stipulations entered during the course of the litigation streamlined the trial issues and eliminated the '945 patent counterclaims.  [Dkt. Entries 55, 72, 204].  The trial addressed the claims that Novel and DRL infringed all three patents, that Actavis infringed the '628 and '131 patents, that Par infringed the '131 and '809 patents and that TWi infringed the '131 patent. [Dkt. Entry 328].

On March 27, 2015, the Court issued its bench trial opinion and order [Dkt. Entries 390, 391], the findings of which are reflected in the Court's Final Judgment of April 9, 2015 [Dkt. Entry 395].  The Court held that all five defendants infringed the '131 patent, that only Novel

infringed the '628 patent, and that Novel, DRL and Par infringed the '809 patent. The only findings of non-infringement were of the '628 patent by Actavis and DRL. However, the Court also determined that the asserted claims of all three patents were invalid for obviousness. Accordingly, final judgment was entered against Plaintiffs and in favor of all five defendants.

The Final Judgment further provided that "Defendants' claims for . . . costs are expressly preserved and may be presented to the Court upon the conclusion of any appeal, following remand to this Court, or if there is no appeal taken, then 60 days from the entry of Final Judgment in this matter, or upon such schedule as the Court may approve." Id. at 5. The order also reminded that Par and TWi had waived all costs in this action. Id.

On May 6, 2015, Plaintiffs appealed to the Court of Appeals for the Federal Circuit from this Court's Markman rulings, bench trial opinion and order, and Final Judgment. [Dkt. Entries 403, 405]. The Federal Circuit affirmed this Court's holdings on January 8, 2016 in a *per curiam* decision without opinion [Dkt. Entry 428] and issued its mandate on February 16, 2016 [Dkt. Entry 432], taxing appellate costs of $464.13 against Plaintiffs/Appellants.

On February 8, 2016, Defendants filed the bill of costs [Dkt. Entry 429] here at issue, seeking the costs of: trial transcripts ($33,086.67); printed deposition transcripts and videotapes ($123,032.05); witness fees ($10,711.17); document production ($4,535.54); rental of multimedia equipment for use in the courtroom ($2,538.57); photocopies for witness notebooks ($3,728.13) and rental equipment to make witness notebooks ($9,367.99); or a total of $187,000.12.

While Plaintiffs do not object to the requested cost of trial transcripts, they argue that deposition costs and witness fees should be reduced and that the remaining costs should be denied in their entirety. They advocate taxing $111,462.29 in total. Pls.' Br., [Dkt. Entry 433].

-4-

## I.      **Legal Standards**

Defendants' motion is made pursuant to Fed. R. Civ. P. 54(d) (1), which provides in relevant part that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."

In a patent case, the definition of "prevailing party" is governed by Federal Circuit law. Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1181-82 (Fed. Cir. 1996).  To achieve "prevailing" status, a party must obtain relief on the merits of its claim that materially alters the legal relationship between the parties by modifying its opponent's behavior in a way that directly benefits that party.  Id. at 1182 (citing Farrar v. Hobby, 506 U.S. 103, 111-113 (1992)).

While the threshold issue of deciding prevailing party status is a matter of Federal Circuit law, the second inquiry, that of whether and how much to award, is a matter of regional circuit law.  Id. at 1183.  Therefore, the decisions of whether to award certain types of costs to the prevailing party and the amounts to be awarded are governed by Third Circuit law here.

In this Circuit, there is such a strong presumption that costs should be awarded to the prevailing party that, " '[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.' "  Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli RR Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)).  The rationale behind this presumption is that the denial of costs is tantamount to a penalty.  Id. at 288-89 (citing ADM Corp. v. Speedmaster Packaging Corp., 525 F.2d 662, 665 (3d Cir 1975)).

-5-

Despite this presumption, the types of costs that may be taxed under Rule 54(d) are restricted to those enumerated in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).

The Supreme Court reinforced its Crawford Fitting holding in Taniguchi v. Kan Pacific Saipan, Ltd., 132 S.Ct. 1997 (2012), wherein it limited the "compensation of interpreters" in § 1920 (6) to the cost of oral translation. The Court noted that its denial of the cost of document translation was "in keeping with the narrow scope of taxable costs." Id. at 2006.

In addition to Rule 54(d) and 28 U.S.C. § 1920, Defendant's motion is governed by Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920. Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2016 ed.) at 261.

Thus, while a prevailing party is entitled to costs under Rule 54(d), "those costs often fall well short of the party's actual litigation expenses." In re Paoli, 221 F.3d at 458. Furthermore, despite the presumption in its favor, the prevailing party must provide sufficient information to carry its burden of showing that the costs sought fall within the limits of § 1920. Romero v. CSX Transp., Inc., 270 F.R.D. 199, 201-02 (D.N.J. 2010).

-6-

Without doubt, Defendants are the prevailing parties in this matter and Plaintiffs do not

contend otherwise.  Final judgment was entered by this Court in favor of Defendants and against

Plaintiffs and was affirmed by the Federal Circuit.  The Court's ruling that the patents at issue

are invalid materially altered the legal relationship of the parties in a way that directly benefitted

Defendants.

Additionally, Defendants have complied with the procedural requirements of L. Civ.

R. 54.1 by timely filing and serving their notice of motion [Dkt. Entry 429] and Bill of Costs,

AO 133 Form [Dkt. Entry 429-1].  The Clerk applies the usual 30-day time period of L. Civ. R.

54.1(a) to the extension granted in this Court's final judgment.  Defendants' application was

timely because it was filed on Monday, February 8, the first weekday after the 30th day following

the Federal Circuit's judgment.  Fed. R. Civ. P. 6(a) (1).  Moreover, as required under 28 U.S.C.

§ 1924 and L. Civ. R. 54.1(b), the costs have been verified by counsel for Novel, Miles A. Finn,

Esq., in the AO 133 Form, and by counsel for DRL and Actavis in the Declarations of Nicholas

A. Geiger, Esq. [Dkt. Entry 429-9] and Dan H. Hoang, Esq. [Dkt. Entry 429-10], respectively.

Also, as required under L. Civ. R. 54.1(b), copies of supporting invoices have been appended as

exhibits to the separate Declaration of Miles A. Finn, Esq. ("Finn Decl.") [Dkt. Entry 429-2].

Therefore, the Clerk will now examine the specific costs requested by Defendants, in the order

in which they appear in § 1920.

## II.    Fees for Printed and Electronically Recorded Transcripts, § 1920 (2)

Under § 1920 (2), Defendants seek the costs of the printed transcripts of the trial

($33,086.67), as well as printed transcripts and videotaping charges of depositions

($123,032.05), or a total of $156,118.72 in this category.  Plaintiffs do not object to taxing

trial transcript costs but do assert that the ASCII and realtime costs of depositions should be denied, as well as certain videotaping charges.  Pls.' Br. at 1-4.

### Trial Transcripts

The trial transcripts cost a total of $33,086.67, with Novel, DRL and Actavis each paying $11,028.89.  Finn Decl., Exs. B-D.  This amount represents 2,143 pages charged at the rate of $4.87 per page for the ten days of trial and an additional 161 pages, produced during closings, charged at the rate of $3.68 per page.  Id.

Fees for recorded transcripts are taxable under § 1920 (2) if the transcripts were "necessarily obtained for use in the case."  Local Civil Rule 54.1(g) (6) specifies:

> The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge to be reduced to a formal order, or (C) if required for the record on appeal. . . Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court.  All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

Plaintiffs do not object at all to this cost and Defendants have adequately shown the necessity of the transcripts, which were used in several ways, according to Defendants:

> The transcripts were used during the trial. For example, Defendants used the transcript to determine which documents had been admitted as exhibits. Finn Decl. at ¶ 4. The trial transcript was used in open court. See, e.g., Tr. at 3.79:17-25 (the Court asking for a question to be read back following an objection by Defendants). This Court also cited to each trial day's transcript in its final opinion. (See, e.g., D.I. 420-1 at 11 (Days 1 and 2); 15 (Day 3); 16 (Day 4); 20 (Day 5); 31 (Day 6); 34 (Day 7); 52 (Day 8); 60 (Day 9); 67 (Day 10).) Plaintiffs and Defendants both cited to the trial transcript in their Joint Side-By-Side Proposed Findings of Fact. (D.I. 374-1.) The transcripts were used to prepare appellate briefing. Finn Decl. at ¶ 4.

Defs.' Br. at 7.

The trial transcripts were "necessarily obtained" and their cost is allowable under our local court rule.  In essence, the Court requested the transcripts by ordering the parties to file

-8-

proposed findings of fact and conclusions of law a month after the completion of trial.  [Dkt.

Entry 345].  For the foregoing reasons, the Clerk taxes the full uncontested cost of **$33,086.67**.

### *Printed or Electronically Recorded Deposition Transcripts*

Defendants ask for $123,032.05 in costs arising out of the depositions of: Plaintiffs'

expert witnesses (Drs. Czeisler, Drover, Kryger and Polli); fact witnesses noticed by Defendants

(Kraft, Moline, Oclassen, and Drs. Parikh, Pather, Roth and Singh); Defendants' expert

witnesses (Drs. Banakar, McConville, Michniak-Kohn and Winkelman); Defendants' party

witnesses (Jadeja, Liang, Venugopal, Kumar, Dr. Viswanathan, Garegnani, Gorlamari and

Talbot); and Dr. Teitelbaum (noticed by Plaintiffs).  Defs.' Br. at 4-16.  Upon reviewing

Defendants' proofs, the Clerk has found a discrepancy of $452.45.  Submitted invoices support

an application for $122,579.60 in deposition costs, not $123,032.05.[3]

The requested amounts shown in Defendants' charts exclude charges for shipping,

handling, exhibit scanning and hyperlinking, but include the costs of ASCII, realtime and

videotaping in connection with certain witnesses.  Finn Decl. ¶¶ 9-13.  It is to this latter group

of charges that Plaintiffs object, as set forth in their detailed chart.  Pls.' Br. at 1-5, Ex. A.

Plaintiffs propose that deposition costs be taxed in the amount of $73,727.15, after the deduction

of charges for services they describe as "merely attorney conveniences."  Pls.' Br. at 3.

---

[3]      The $452.45 discrepancy originates from three errors:  1/ for the October 23, 2013
Polli deposition, DRL's transcript charge was $549.40, not $594.40 ($45.00 difference); [Dkt.
Entry 429-5 at 21]; 2/ for the July 30, 2014 Polli deposition, Novel's transcript charge was
$1,134.95, not $1,522.40 ($387.45 difference) [Dkt. Entry 429-6 at 21]; 3/ for the Banakar
deposition, Novel's "Videosynch/Tape" charge was $260.00, not $280.00 ($20.00 difference)
[Dkt. Entry 429-6 at 38].  $45.00 + $387.45 + $20.00 = $452.45.

As with hearing transcripts, the costs of deposition transcripts are taxable under § 1920 (2) to the extent that the transcripts were "necessarily obtained for use in the case." Although L.Civ. R. 54.1(g) (7) restricts taxation to the "fees and charges incurred in the taking and transcribing of depositions used at the trial," it is well-accepted that "[f]or the costs to be taxable, the depositions need not have been used at trial, and must only 'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'" Thabault v. Chait, Civ. A. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., Civ. A. No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)); Lewis v. City of Chicago, No. 04 C 6050, 2012 WL 6720411, at *5 (N.D.Ill. Dec. 21, 2012) ("[t]he proper inquiry is whether the deposition was 'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court").

Defendants have established the necessity of the 24 witness' depositions, as outlined in their chart summarizing each deponent's area of testimony. Finn. Decl., Ex. E at 2-3. They have explained that Plaintiffs' experts needed to be deposed because they were expected to testify at trial on the issues of the infringement and validity of the asserted claims; Plaintiffs' fact witnesses (party employees, named inventors, Transcept officer, third parties who supported issuance of the patents) had information relevant to Defendants' counterclaims; and it was necessary to obtain transcripts of depositions noticed by losing party Plaintiffs (Defendants' experts, employees of Defendants and third party, Dr. Jacob Teitelbaum) because, as expected, the transcripts and/or videotapes were used during the trial. Defs.' Br. at 10-16.

Plaintiffs do not dispute the necessity of any of the depositions but argue that the requested costs are over-inclusive. Defendants ask for $14,071.00 in realtime fees in connection

-10-

with all but nine depositions and $24,893.95 in ASCII costs in connection with  all but the
deposition of Dr. Thomas Roth, for which such costs were not separately invoiced.  Plaintiffs
object to all requested realtime and ASCII costs and also, to videotaping charges in connection
with eleven depositions.  The only deposition which Plaintiffs agree should be taxed in the full
requested amount, $3,013.87, is that of Dr. Roth.  Pls.' Br., Ex. A.  They do not contest the
$1,423.87 cost of the certified transcript and the $1,590.00 cost of the video, which was played
during two days of trial.  [Dkt. Entries 344, 345].

*ASCII Charges*

As noted by Plaintiffs, it is the Clerk's practice to deny the costs of ASCII versions and
real time, absent a showing of necessity by the movant.  Mylan v. SmithKline Beecham Corp.,
Civ. A. No. 10-4809, 2015 WL 1931139, at *7 (D.N.J. Apr. 28, 2015) (citing other Clerk's
decisions so holding).  Losing parties will not be held to pay for conveniences of counsel
and Plaintiffs maintain that the fees requested for these litigation support services are just that.

Defendants justify ASCII costs due to "clustering of depositions in time [which] resulted
in the need for counsel to review deponents' testimony before a certified copy arrived."  Defs.'
Br. at 8.  Such clustering occurred in February/March of 2013 (seven depositions), April of 2014
(five depositions), and July/August of 2014 (nine depositions, with the last taken on August 4-5),
while summary judgment motions were due on August 15, 2014.  Id. at 8-9.  Defendants cite just
two other instances in arguing that ASCII versions were necessary, aside from the close time
frame between the July/August 2014 clustering and the summary judgment briefing deadline,
i.e., "Dr. Polli's October 23, 2013 deposition [which] was taken less than a month before
Defendants' Responsive Claim Construction Brief was filed, Nov. 22, 2013; [and] Dr. Kryger's
November 11, 2013 transcript [which] was taken less than two weeks before that date."  Id. at 9.

-11-

Plaintiffs reply that this "clustering" did not affect Defendants' ability to use the transcripts in summary judgment or at trial and therefore, ASCII versions were not necessary. They point to fees paid for expedited delivery of certain transcripts in addition to ASCII and they do not oppose taxation of such expedited service.  Pls.' Br. at 3.

The Clerk agrees with Plaintiffs with regard to all but one deposition.  Concerning Dr. Polli's October 23, 2013 deposition, the Clerk believes that a month was ample time for Defendants to prepare their responsive Markman brief, filed on November 22.  With regard to Dr. Kryger's November 11, 2013 transcript, the Clerk notes that the transcript costs include a $184.36 charge to each of the three Defendants for 3 day delivery and Plaintiffs do not object to paying such charges.  [Dkt. Entries 429-4 at 14, 429-5 at 16, 429-6 at 13].  As for the motion for partial summary judgment filed jointly by Defendants on August 15, 2014, two depositions were close in time, that of Dr. Polli on July 30-31 and of Dr. Kryger on August 4-5.  However, the charges to Novel for Dr. Polli's depositions include a $315.70 charge for 5 day delivery of the July 30 deposition [Dkt. Entry 429-6 at 21] and a $239.80 charge for 4 day delivery of the July 31 deposition.  [Dkt. Entry 429-6 at 23].  Plaintiffs do not object to paying such costs. In light of Plaintiffs' agreement to pay for these expedited deliveries, the Clerk will not tax the additional costs of ASCII versions of the Polli depositions and the November 11, 2013 Kryger deposition.

However, Dr. Kryger was deposed again on August 4-5, 2014, just ten days before the filing of Defendants' summary judgment motion, to which excerpts of that deposition were attached as an exhibit.  [Dkt. Entry 220, Ex. 21].  The transcript costs do not include any costs for expedited service.  Therefore, the Clerk will allow the costs of **$1,526.85** and **$1,482.30**

-12-

incurred by Defendants for ASCII versions of the August 4 and August 5 depositions,

respectively.  [Dkt. Entries 429-4 at 15, 17; 429-5 at 17, 19; 429-6 at 15, 17].  The remaining

ASCII costs in the amount of $21,884.80 ($24,893.95 – ($1,526.85 + $1,482.30)) are denied

and will be deducted from Defendants' requested total deposition costs.

*Realtime Charges*

Defendants ask for the $14,071.00 cost of realtime feed, which was ordered in addition

to printed transcripts for all but nine depositions.  The movants justify this cost as follows:

> Real-time services were necessary for the depositions of experts for several reasons.
> First, with limited time for each deposition, and up to five defendants needing to ask
> questions, it was important for counsel to review the questions asked so as not to waste
> time by asking redundant questions.  Second, given the highly technical nature of the
> experts' testimony, it was necessary to review the questions and the testimony to ensure
> that both were precise.  Confirming the need for real-time services, Defendants
> understand that Plaintiffs used real-time services in most or all of the expert depositions.
> These issues are also relevant to fact witnesses, who testified about technical clinical
> and/or chemical subjects.  Further, every one of Defendant's fact witnesses for whom
> real-time costs are requested speak in accented English.  Finn Decl. at ¶ 12.  Defending
> counsel in these depositions used real-time services to ensure that the technical language
> was properly transcribed, and accordingly the use of real-time services [was] necessary in
> this matter.

Defs.' Br. at 9-10.

The Clerk is not persuaded by Defendants' reasons and two of Defendants' above

explanations were explicitly rejected in another patent infringement case, <u>DeKalb Genetics Corp.</u>

<u>v. Pioneer Hi-Bred Int'l, Inc.</u>, Nos. 96 C 50240, 96 C 50113, 2002 WL 1969666, at *3 (N.D. Ill.

Aug. 26, 2002).  The court there noted that while realtime made the task of avoiding duplicate

questions "easier," the service was not "necessary."  As Plaintiffs here point out, counsel could

have coordinated their questions ahead of  time.  Nor was the <u>DeKalb Genetics</u> court swayed by

the fact that counsel for both sides had ordered realtime.  The realtime charges were deducted

because the service was merely an attorney convenience.

-13-

Defendants' additional rationale of ensuring accurate transcription due to the technical nature of the subject matter and "accented English" is not convincing either.  This case does not stand out from the many other complex Hatch-Waxman cases in which realtime services have been denied as a convenience and as Plaintiffs state, precision is desirable in every case.  While their fact witnesses spoke in "accented English," Defendants cite no instances where the realtime was actually necessary to correct misinterpretations and certainly, the court reporter and counsel present could have sought clarification, if needed.  Accordingly, these charges are denied.

*Videotaping Charges*

Deposition costs sought include videotaping charges in connection with all depositions except that of Michniak-Kohn on January 15, 2014, Liang, Garegnani, and Talbot.

Since its amendment in 2008 to include "electronically recorded transcripts," § 1920 (2) incorporates videotaping charges to the extent that the videotapes were "necessarily obtained for use in the case."  As a general matter, videotaped depositions are deemed necessary if they were displayed to the court during proceedings or used for the determination of motions before the court.  Pharm. Res., Inc. v. Roxane Labs., Inc., Civ. A. No. 03-3357, 2008 WL 2951173, at *5 (D.N.J. July 25, 2008).  Plaintiffs do not object to taxing the costs of videotapes played at trial or of expert witnesses Drover and Michniak-Kohn, who testified at trial.  Plaintiffs do contest the $9,932.50 cost of the Czeisler, Kryger, Oclassen, Pather, Banakar, McConville, Winkelman and Jadeja videotapes, because they were not played at trial.[4]  Pls.' Br. at 4-5, Ex. A.

---

[4]    Plaintiffs' chart of "Deposition Transcript Cost Corrections," Pls.'s Br., Ex. A, shows a total "Nontaxable video fee" of $9,952.50, but it is actually $9,932.50, after correction of  the cost of the Banakar "Videosynch/Tape," which was $400, not $420.00.

Defendants justify some of these costs on the ground that Plaintiffs noticed the depositions as video depositions. Defs.' Br. at 10. As Defendants point out, this Court has taxed videotaping costs against the losing party when that party noticed the depositions as video depositions. Inherent in the losing party's notice is the presumption by that party that the videos would be necessary and it would be inequitable to require the prevailing party to dispute such charges just because the videos were not played at trial. Janssen Pharm. N.V. v. Mylan Pharms., Inc., Civ. A. Nos. 03-6220, 03-6185, 2007 WL 925535, at *5 (D.N.J. Mar. 23, 2007). "That the [losing parties] themselves requested the video depositions indicates that these depositions were 'necessary for trial.'" Otsuka Pharm. Co., Ltd. v. Sandoz, Inc., Civ. A. No. 07-1000, 2015 WL 5921049, at *7 (D.N.J. Oct. 9, 2015), citing Janssen Pharm. N.V. case. Accordingly, the Clerk will tax the videotaping charges arising out of the Banakar ($400.00), McConville ($390.00), Winkleman ($500.00 + $200.00) and Jadeja ($210.00) depositions, noticed as video depositions by Plaintiffs.

The following videotaped depositions were noticed by Defendants, not Plaintiffs, Finn Decl., Ex. E, and the videotapes were not played at trial, nor have Defendants specified another use for them: Czeisler ($2,252.50); Kryger ($865.00, $1,545.00, $1,645.00); Oclassen ($995.00); and Pather ($930.00). Therefore, these videotaping charges, amounting to $8,232.50, are denied and will be deducted from the total requested deposition costs.

In accordance with all of the above, the requested deposition cost of $122,579.60 is reduced in the amount of $44,188.30: $21,884.80 for ASCII; $14,071.00 for realtime; and $8,232.50 for videotaping charges. Deposition costs are taxed in the amount of **$78,391.30**.

.       Combining the granted deposition costs with the $33,086.67 taxed cost of trial transcripts, all transcripts are taxed in the amount of **$111,477.97**, pursuant to § 1920 (2).

### III.   <u>Witness Fees, § 1920 (3)</u>

Defendants request witness fees in the total amount of $10,711.17 pursuant to § 1920 (3).

These fees arise out of the attendance at depositions and the trial of their expert witnesses,

Drs. Banakar, McConville, Michniak-Kohn and Winkelman.  Finn Decl. ¶ 15.

Plaintiffs respond that "defendants' bill of costs improperly includes attendance fees for

experts on days that they were not testifying, and travel and subsistence for periods far in excess

of the days in which the experts testified."  Pls.' Br. at 5-6.  Plaintiffs also object to travel costs

that were not at the most economical rate reasonably available and not statutorily permitted.  <u>Id.</u>

at 7-8.  According to their Witness Allowance Corrections chart, <u>id.</u> at Ex. B, only $4,648.47 in

witness fees should be taxed, after non-taxable costs in the amount of $6,062.70 are deducted.

The taxation of witness fees is governed by 28 U.S.C. § 1821, as recognized by our

Local Civil Rule 54.1(g):

> (1) The fees of witnesses for actual and proper attendance shall be allowed,
> whether such attendance was voluntary or procured by subpoena. The rates
> for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C.
> § 1821).  Witness fees and subsistence are taxable only for the reasonable
> period during which the witness was within the District.  Subsistence to the
> witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse
> to the residence of the witness is such that mileage fees would be greater than
> subsistence fees if the witness were to return to his or her residence from day
> to day.

L. Civ. R. 54.1(g) (1).

L. Civ. R. 54.1(g) (7) further provides that "[f]ees for the witness at the taking of a

deposition are taxable at the same rate as for attendance at trial.(See L. Civ. R. 54.1(g )(1).)"

Section 1821 of Title 28 provides for the payment of witnesses' fees and allowances for

their attendance in federal court.  28 U.S.C. § 1821(a) (1).  Subsection (b) therein allows a $40

per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."  Subsection (c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," including parking fees and tolls. Subsection (d) allows a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5702(a), in the area of attendance.  GSA rates for lodging and for meals and incidental expenses ("M & IE"), including travel day M & IE (taxed at 75% of full day M & IE), can be found at www.gsa.gov/portal/category/100120.[5]

All of Plaintiffs' objections are well-taken and are reflected in the Clerk's assessment that follows:

*Dr. Banakar* - For his deposition in Chicago, IL on July 22, 2014, this witness traveled approximately 180 miles each way by rental car from Carmel, IN.  Defendants request just one day of attendance fees ($40.00), lodging for two nights at the applicable GSA rate of $166.00/night ($332.00), and taxi fares covering the trips between his hotel and the deposition ($91.00).  [Dkt. Entry 429-4 at 54, 57].  Plaintiffs do not object to these fees, which the Clerk will tax, as well as an additional $80.00 in attendance fees to cover this witness' two travel days. Dr. Banakar's deposition fees total **$543.00** ($120.00 + $332.00 + $91.00).

As for Dr. Banakar's trial expenses, Plaintiffs object just to the requested lodging costs ($536.00), which they view as excessive and assert should be halved.  As observed by Plaintiffs,

[5]      The Clerk notes that Defendants have not requested reimbursement of M & IE.

-17-

Dr. Banakar testified in Newark on just one day of the trial, December 4, 2014, and yet, Defendants include the cost of four nights of lodging at the applicable GSA rate of $134/night.

A witness is in "attendance" within the meaning of § 1821 when he is in "necessary attendance," Hurtado v. United States, 410 U.S. 578, 583-87 (1973).  Defendants have not explained why any of their experts needed to attend the trial on days prior to the days of their actual testimony.  The movants have not indicated that the witnesses were holding themselves available to testify on those other days, as opposed to consulting with counsel.  As stated in Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., "attendance for the purpose of consultation is not necessary attendance within the meaning of 28 U.S.C. § 1821(b)."  193 F.R.D. 26, 36 (D.P.R. 2000), aff'd, 295 F.3d 108 (1st Cir. 2002).  Therefore, the Clerk grants costs arising out of only those days upon which Defendants' experts actually testified.

 For this long-distance witness, trial costs are granted for three days of attendance, incorporating two travel days ($120.00), two nights of lodging ($268.00) and substantiated airfare and taxi fares ($731.20).  [Dkt. Entry 429-4 at 59-61].  Dr. Banakar's taxable trial costs total **$1,119.20**.

*Dr. McConville* – Requested deposition costs of this witness from Albuquerque, NM consist of $1,267.20 to cover "[t]ravel to deposition," and one day of attendance, $40.00 for a deposition held on November 19-21, 2014 in Atlanta, GA.  Finn Decl. at 17.

Plaintiffs ask the Clerk to deny the entire $1,267.20 cost because it actually includes first-class airfare, which is not "the most economical rate reasonably available" mandated by § 1821 (c)(1), and two nights of lodging at the rate of $239.00/night.  [Dkt. Entry 429-5 at 62-63].  The Clerk denies all such costs because the dates of this deposition do not match the date of the deposition shown by Defendants to have been necessary, that taken on July 15, 2014.

-18-

As for his trial costs, Defendants ask for the statutory $40.00/day fee, lodging for four nights ($536.00) and duplicate airfare ($932.30, $485.00, $972.20), in connection with Dr. McConville's testimony on December 4 and 5, 2014.  Plaintiffs contest a fourth night of lodging and airfare beyond the initial fee paid of $932.20.  They explain that Defendants changed Dr. McConville's return flight to an earlier time. incurring the $485.00 and $972.20 costs, but he ended up returning home on the initially scheduled flight.  The Clerk agrees that Plaintiffs should not have to pay for Defendants' miscalculation in scheduling.  This witness' trial costs are taxed for four days of attendance, including two travel days ($160.00), the original airfare ($932.20), and three nights of lodging ($402.00).  Dr. McConville's trial costs are taxed in the total amount of **$1,494.20**.

*Dr. Michniak-Kohn* – This witness, who hails from Piscataway, NJ, testified at a deposition in Newark on January 15, 2014  and another in New York City on July 10-11, 2014.  Requested costs include three days of attendance fees, $120.00, to correspond to his three days of testimony and the $326.31 cost of car service to attend the New York depositions.  Plaintiffs do not object to any of these costs, which the Clerk taxes in the total amount of **$446.31**.

Conversely, Plaintiffs object to almost all of the costs sought in connection with Dr. Michniak-Kohn's trial testimony on December 8-9, 2014, i.e., $240.00 in attendance fees to cover December 3, 4, 6, 7, 8, 9, and $1,628.70 in travel costs.  Defendants fail to justify the cost of this local witness' trial attendance for an additional four days, including two weekend days, and the witness' use of an expensive limousine service for the approximate 27 mile trip between Piscataway and Newark.  As noted by Plaintiffs, in a similar situation, this Court found "excessive" the $462.40 fee of a private car service to travel 24 miles and 32 miles roundtrip,

-19-

and instead taxed travel costs using the GSA mileage rate for privately-owned automobiles. Romero, 270 F.R.D. at 203-04.  Accordingly, in addition to the two days of attendance fees ($80.00), the Clerk taxes travel costs at the applicable GSA rate of $.56/mile for the two 54-mile roundtrips or $60.48 (108 x .56).  http://jnet.ao.dcn/financial-management/new-mileage-rates-effective-january-1-2014.  Dr. Michniak-Kohn's taxable trial costs total **$140.48**.

*Dr. Winkelman* – This witness from the Boston area testified at a deposition in Hartford, CT on July 24-25, 2014.  The attendance fee, the sole cost requested in connection therewith, will be granted in the amount of **$80.00** for two days of attendance.

Dr. Winkelman also testified at trial on December 9-10, 2014 and returned home on the evening of the 10th.  Defendants request not only the coach airfare of flights from Boston to Newark on December 1 ($240.18) and Newark to Boston on December 10 ($303.10), but also the $404.08 cost of flights from Newark to Boston on the evening of December 6 and from Boston to Newark on the following morning.  [Dkt. Entry 429-5 at 50-51, 55-56, 58-59].  The Clerk agrees with Plaintiffs that they should not have to pay for a quick return home when the witness arrived earlier than necessary in the first place.  Including travel, which should have occurred on December 8, granted trial costs for this witness consist of three days of attendance or $120.00, airfare of $240.18 and $303.10, and two nights of lodging or $268.00.  These amount to **$931.28**.

Pursuant to § 1920 (3), witness fees are taxed in the combined amount of **$4,754.47** ($543.00 + $1,119.20 + $1,494.20 + $446.31 + $140.48 + $80.00 + $931.28).

### IV.    Fees for Exemplification and the Costs of Making Copies, § 1920 (4)

The final category of costs sought by Defendants is § 1920 (4)'s allowance for "fees for exemplification and the costs of making copies."  Captured within this category

are Defendants' costs of document production ($4,535.54), witness notebooks, including rental

of equipment to make the notebooks ($13,096.12), and rental of courtroom multimedia

equipment ($2,538.57).  Plaintiffs' position is that Defendants are entitled to none of the above

costs, totaling $20,170.23.

*Document Production*

Defendants seek reimbursement of their "disbursements for scanning Defendants' hard-

copy documents produced to Plaintiffs, and costs for converting Defendants' electronically-

stored documents for production to Plaintiffs," which total $4,535.54.  Finn Decl. ¶ 16.

In response, Plaintiffs argue that these costs are not taxable because L. Civ. R. 54.1(g) (9)

allows costs only when "the documents are admitted into evidence or necessarily attached to a

document required to be filed and served in support of a dispositive motion."  Pls.'s Br. at 9-10.

The taxation of the cost of making copies is governed by the Third Circuit's well-known

decision in Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012).

That decision teaches us that certain very limited costs of producing electronically-stored

information ("ESI") are taxable.  This is so, despite the restrictions of our local rule.  The Third

Circuit earlier taught us that a local court rule which conflicts with a federal statute must yield

to the statute.  In re Baby Food Antitrust Litig., 166 F.3d 112, 139 (3d Cir. 1999).  See also

Honeywell Int'l Inc. v. Nokia Corp., C.A. No. 04-1337, 2014 WL 2568041, at *7 (D. Del.

May 30, 2014) (granting transcript costs to the full extent permitted by § 1920, despite the

limitations of the local court rule), vacated on other grounds, 615 F. App'x 688 (Fed.Cir. 2015).

Therefore, the broader qualification of § 1920 (4), requiring that the copies were "necessarily

obtained for use in the case," applies, rather than the specifications of L. Civ. R. 54.1(g) (9).

Plaintiffs' argument fails.

-21-

As in this case [Dkt. Entry 65], the parties in the Race Tires case agreed that ESI would be produced in Tagged Image File Format ("TIFF"), an image format whereby ESI is converted into a non-editable digital file.  The costs there sought arose out of the electronic discovery vendor's services of :  "(1) preservation and collection of ESI; (2) processing the collected ESI; (3) keyword searching; (4) culling privileged material; (5) scanning and TIFF conversion; (6) optical character recognition ('OCR') conversion; and (7) conversion of racing videos from VHS format to DVD format."  674 F.3d at 161-62.

The Third Circuit first determined that the vendors' services did not constitute "exemplification," as set forth in § 1920 (4), and then addressed which charges fell under the other category of § 1920 (4), "the costs of making copies."  Adopting a narrow reading of the statute, pursuant to the legislative history and directive of the Supreme Court in the Crawford Fitting case, it found that only the costs of scanning hard copy documents, converting native files to the agreed-upon format, and transferring VHS tapes to DVD format were taxable.  Id. at 171. None of the services leading up to the actual production constituted "making copies."

Three months ago, the Third Circuit reviewed its Race Tires decision in the case of Camesi v. Univ. of Pittsburgh Med. Ctr., 818 F.3d 132 (3d Cir. 2016).  The circuit court reaffirmed its restrictive construction of § 1920 (4) and held that the ESI services of "Process to Ontrack Inview" were not explained sufficiently to determine their taxability under Race Tires. Accordingly, remand to the district court was necessary for the possible taking of additional evidence.

In Camesi, The Third Circuit clarified that "[e]ven the term 'scanning,' as used in Race Tires, applied only to the 'scanning of hard copy documents' as 'making copies' for the

requesting party.  674 F.3d at 171 (emphasis added).   This is not necessarily the same as 'scanning . . . [prevailing party's] *electronic* documents' . . . for the benefit of the responding party, rather than to produce to the requesting party."  Id. at 140.  Nothing in the record there showed that the services were performed in order to create a readable format for the losing parties, rather than for the prevailing parties' own review and benefit.

The services at issue in this case are described in the substantiating invoices as:  "Scan – Medium," charged at $177.75 [Dkt. Entry 429-6 at 61]; "ESI Net GB Processing Export 2 and Export 3," charged at $3,907.79, id. at 63; and "Manual Reformatting and Printing of Spreadsheets," charged at $450.00, id. at 64.

The Clerk cannot find that the costs of any of these services are taxable under the Race Tires holding.  The second invoice entry above of "Processing" is too vague to be taxed. RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc., Civ. A. No. WMN-09-1668, 2016 WL 1377405 (D. Md. Apr. 7, 2016) (applying the Fourth Circuit's holding in Country Vintner of N.C., LLC v. E. & J. Gallo Winery., Inc., 718 F.3d 249 (4th Cir. 2013), similar to Race Tires, and finding that prevailing party had not met its burden of showing that services such as "native file processing" were attributable to copying).  The third entry, that of "Manual Reformatting," charged in combination with "Printing of Spreadsheets," is a preparatory activity that preceded the printing and is unquestionably non-taxable under the Race Tires decision.  Even the first entry of "Scan – Medium," which most closely approaches the services deemed taxable in Race Tires, is ambiguous.  As discussed above, the Camesi court drew a distinction between the scanning of hard copy documents and the scanning of electronic documents.  The invoice submitted by Defendants does not specify what was scanned.  For these reasons, the requested cost of document production is denied in its entirety.

*Witness Notebooks, Including Equipment Rental*

Defendants ask for the $13,096.12 cost of creating witness notebooks, which the parties agreed would be provided to each witness, opposing counsel and the Court.  Defs.' Br. at 19. This cost consists of the $3,728.13 charge for approximately 29,000 photocopies, and three separate charges for equipment used to make the witness notebooks, invoiced at $6,367.80, $529.65 and $2,470.54.  [Dkt. Entries 429-5 at 61, 429-6 at 66-73].

As noted above, § 1920 (4) allows for the cost of copies to the extent that the copies were "necessarily obtained for use in the case."  The test of subsection (4) is satisfied if the copies were required to be filed with the court or provided to opposing counsel. Copies may have been necessarily obtained under other circumstances as well, such as to prepare one's defense in the case.  Conversely, general copying costs are not recoverable and neither are the costs of copies obtained merely for the convenience of counsel.  As the prevailing party knows the purpose of its copies, it must demonstrate that the copies were necessarily obtained for a reimbursable use in the case.  See, e.g., Awwad v. Largo Medical Center, Inc., No. 8:11-cv-1638-T-24 TBM, 2013 WL 6198856, at *5 (S.D. Fla. Nov. 27, 2013) (stating generally accepted principles governing the taxation of the cost of copies).

Defendants explain that these copies were necessary because the notebooks were required to be furnished and were indeed furnished.  In support, they rely upon this Court's decision in another complex patent case, the previously cited Otsuka case, wherein the Court allowed the cost of trial preparation materials, including deposition transcripts and witness binders, which were submitted to the Court and opposing counsel.  2015 WL 5921049, at *9 (citing Clerk's decision in Eli Lilly & Co. v. Actavis Elizabeth LLC, No. 07-3770, [Dkt. Entry 759] (D.N.J. Jan. 24, 2013)).

However, the Otsuka case, like most others previously before the Clerk, dealt only with copies, prints and blowbacks, not photocopying equipment.  Even so, as Plaintiffs point out, the Clerk did have occasion to address the cost of such equipment a few years back and determined that it was not recoverable.  Merck Sharp & Dohme Pharms., SRL v. Teva Pharms. USA, Inc., Civ. A. No. 07-1596, 2010 WL 1381413, at *7-8 (D.N.J. Mar. 31, 2010).

More recently, another district court, relying upon the Race Tires and Country Vintner cases, explained that the cost of leasing photocopying equipment is not taxable.  Balance Point Divorce Funding, LLC v. Scrantom, 305 F.R.D. 67, 76 (S.D.N.Y. 2015).  The court reasoned that while the equipment rental charge is a cost "for managing the copying or production process" which is "perhaps necessary to the copy making process," it is not the cost "for the actual making of the copy."  Id.  Costs of this type may "relate to the copying process, but they are not costs for 'making copies' under section 1920(4)."  Id.

A closer examination of the invoices reveals that indeed, these charges went well beyond those of "making copies."  The charges include entries such as $700 for five racks, $280 for two mobile carts and $850 for the delivery of the racks and carts.  [Dkt. Entry 429-6 at 67-68].  In addition to relying upon the above case law, the Clerk believes that these charges must have been incurred at least in part for the convenience of counsel during the trial, particularly considering that local counsel was located in Newark, near the trial.

The Clerk might have been inclined to grant the $3,728.13 cost of the 3,437 color copies and 25,529 black and white copies, charged at the reasonable rates of $.50 and $.07 each, respectively, particularly in a complex patent case like this.  However, he cannot reconcile the details of the invoice with Defendants' stated purpose of the copies.  Defendants indicate that

-25-

"[t]he parties agreed to provide notebooks containing documents that examination might cover ('witness notebooks') for each witness, opposing counsel, and the Court," Defs.' Br. at 19, but Ricoh's invoice indicates that these copies were ordered on December 15, 2014, the last day of trial.  [Dkt. Entry 429-5 at 61].  Therefore, it appears that these copies were used for unspecified post-trial purposes and not for witness notebooks.  While the prevailing party does not have to give a detailed description of the copies, it bears the burden of identifying the general nature thereof and their necessity.  Coupling the bare Ricoh descriptions of "Prints – Color (ea)" and "Prints w/o Assembly" with Defendants' unsatisfactory explanation, the Clerk finds that Defendants have not met that burden.

Based upon the foregoing, all costs sought in connection with witness notebooks are denied.

### Rental of Multi-Media Equipment

Finally, Defendants ask Plaintiffs to bear Actavis', DRL's and Novel's combined $2,538.57 cost of renting multimedia equipment for use in the courtroom. Finn Decl. ¶ 17; [Dkt. Entries 429-4 at 62, 429-5 at 60, 429-6 at 65].  In support, the movants cite this Court's 2009 decision in the Thabault case, 2009 WL 69332, at *10.   Defs.' Br. at 18-19.

Plaintiffs object on the ground relied upon by another district court within this circuit. In the previously cited Honeywell case, the District of Delaware held that the movant had not shown the necessity of the rented equipment because it failed to show that the court's equipment was unavailable or inadequate.  2014 WL 2568041, at *11.  According to Plaintiffs here, the fees should likewise be denied because Defendants have made no such explanation.  Pls.' Br. at 11.

If taxable, this type of fee would fall under the other category of § 1920 (4), "fees for exemplification."  As earlier mentioned, the Third Circuit has not fleshed out the definition

of "exemplification" within the meaning of § 1920 (4) and therefore, this category causes

consternation for the Clerk. It is true that this Court held in <u>Thabault</u> that the cost of renting

multimedia equipment was taxable.  However, that decision pre-dates the very clear message in

the Supreme Court's <u>Taniguchi</u> decision and the Third Circuit's <u>Race Tires</u> ruling that § 1920

must be narrowly construed.  See <u>Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc</u>, Civ. A.

Nos. 08-6304, 09-2073, 09-1233, 2013 WL 1876441, at *13-17 (D.N.J. Apr. 18, 2013) (Clerk's

extensive discussion of "exemplification" case law and definitions given to that term).

The Clerk embraces the reasoning of the court in <u>Fowler v. California Highway Patrol</u>,

which denied the cost of equipment rental fees based upon the <u>Taniguchi</u> decision and the prior

Ninth Circuit decision denying the cost of video synchronization, <u>Kalitta Air L.L.C. v. Central</u>

<u>Texas Airborne Sys. Inc.</u>, 741 F.3d 955, 959 (9th Cir. 2013):  "In light of recent Supreme Court

and Ninth Circuit guidance, and the proper, narrow construction of § 1920, the Court finds that

Defendants' in-court technical support and equipment rental fees are not properly taxed as costs

because they are not, by their own terms, acts of copying or exemplification."  Case No. 13-cv-

0102, 2014 WL 3965027, at *4 (N.D. Cal. Aug. 13, 2014).

Similarly, based upon the <u>Taniguchi</u> and <u>Race Tires</u> decisions, and in the absence of

Third Circuit precedent on this topic, the Clerk finds it prudent to deny this type of cost.  This

is so because it can also be argued that such equipment is used to enhance counsel's presentation

and is not truly "necessary."

In sum, all costs requested under § 1920 (4) are denied.

### V.   <u>Appellate Costs under the Mandate, Fed. R. App. P. 39(d)</u>

After Defendants filed the within motion, on February 16, 2016, the Federal Circuit

issued its mandate [Dkt. Entry 432], taxing appellate costs in the amount of $464.13 against Plaintiffs/Appellants and in favor of Defendants/Appellees, under Fed. R. App. P. 39(d).

As entered on this Court's docket that same day, our L. Civ. R. 79.4 provides that "[i]n the event that the mandate or judgment provides for costs . . . , the prevailing party shall prepare and submit an order implementing the mandate or judgment." Therefore, even though this later cost was not included in Defendants' motion, in the interests of efficiency, the Clerk shall add this cost to the others granted above.

### VI.    Summary

In sum, the Clerk taxes the following costs in favor of Defendants and against Plaintiffs:

Fees for transcripts, § 1920 (2):               $111,477.97

Fees for witnesses, § 1920 (3):               $   4,754.47

Appellate costs, Fed. R. App. P. 39(d):       $      464.13

**TOTAL:**                                    **$116,696.57**

For the above reasons, the motion of Defendants Actavis Elizabeth LLC, Novel Laboratories, Inc., Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. to tax costs against Plaintiffs Purdue Pharmaceutical Products, L.P., Purdue Pharma L.P. and Transcept Pharmaceuticals, Inc. is hereby **GRANTED IN PART AND DENIED IN PART.** An appropriate order follows.

WILLIAM T. WALSH, CLERK

By:  S/John T. O'Brien
Deputy Clerk

June 20, 2016

-28-